**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **FRANK L LABBY ET AL** | **CASE NO.  2:18-CV-01388** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LABBY MEMORIAL ENTERPRISES, LLC, ET AL** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the Court is "Defendants' Motion for Patial [sic] Summary Judgment, Seeking Judgment Against Plaintiff Frank L. Labby for Dismissal of the Claims in Count I of the Amended Complaint" (Doc. #65) wherein Defendants Labby Memorial Enterprises, LLC and John W. Yopp seek a ruling from this Court finding that Defendants did not breach the Management Agreement.  Defendants move to dismiss Plaintiffs' claims for breach of contract (Count I) with prejudice at Plaintiffs' costs.

**FACTUAL STATEMENT**

The Management Agreement that is the subject of this motion states the following:

17. **Termination for Cause.** This Agreement may be terminated by the Company for cause without notice. As used in this Agreement, "cause means:

(a)    Frank's stealing or unlawful use of property or monies of the Company or the Business;[1]

On February 16, 2017, Frank Labby created a document entitled "Pre-Need Date of Contract"[2] and personally received $9,000.00 from the customer.[3] Frank Labby did not

---

[1] Doc. 37-5, p. 5 ¶ 17(a)).
[2]  Defendants' Exhibit A-2.
[3] Defendants' Exhibit B, Frank Labby Deposition, pp. 103-104, 124-25).

remit the proceeds received from the customer to the insurance company in February of 2017, nor did he place it into a trust account.[4] Frank Labby did not deposit the proceeds from the customer into any account of Labby Memorial Enterprises, LLC.[5] On September 19, 2017, Frank Labby remitted a cashier's check to Homesteaders Life Insurance Company in the amount of $9,000.00.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is

---

[4] Defendants' Exhibit A, John W. Yopp Deposition, ¶ 11; Defendants' Exhibit B, Frank Deposition, pp. 103-104, 125).
[5] Defendants' Exhibit B, Frank Deposition, p. 125; Defendants' Exhibit A, Yopp Affidavit, ¶ 15.

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

As part of the sale and purchase of the Labby Memorial Funeral Homes, Frank Labby and the purchaser, Labby Memorial Enterprises, LLC ("LME") entered into an employment arrangement wherein Frank was employed as a manager by LME from March 2, 2017, until October 2, 2017.[6] As an employee, Frank would consult with customers about their needs to prearrange funeral services; consequently, Frank would participate in the process of obtaining preneed insurance policies.[7]

In May of 2017, Mr. Yopp received information that Frank was in possession of money paid from two customers to fund the customers' preneed insurance policies. When Mr. Yopp confronted Frank about the money, he returned the money paid by the customers to LME.[8]

---

[6] Defendants' Exhibit A, Doc. 65-3, Yopp Affidavit, ¶ 4.
[7] Id. ¶ 5.
[8] Id. ¶ 7.

In September of 2017, Mr. Yopp received a call from a representative of the Louisiana State Board of Embalmers and Funeral Directors about a complaint regarding the allege failure to fund a pre-need insurance policy.[9] The complaint arose from an incident involving an inquiry by a daughter of a pre-need insurance policy.[10] When the daughter inquired about the policy, LME investigated the matter and discovered that a document had been created that listed the Customer's name, the date of the contract (2/16/2017) and an itemization of the goods and services to be provided as well as the cost of the services.[11] LME discovered that the policy had never been funded, but had been deposited into a checking account, unaffiliated with LME.[12]

LME discovered a document purporting to be an application for insurance to Homesteaders Life Company from the customer, dated 2/16/2017; the document acknowledged that the customer had made a payment of $$9,000.00,[13] but there was no record of LME ever receiving the $9,000.00 payment from the customer.[14] In other words, Frank failed to deposit the money in any LME account.[15] Furthermore, Frank failed to report the pre-need contract or receipt of a preneed payment to LME,[16] and prior to the daughter's inquiry, LME had no knowledge of the existence of the pre-need contract.[17]

---

[9] Id. ¶ 8.
[10] Id. ¶ 9.
[11] Id. ¶ 12.
[12] Id. ¶ 11; Defendants Exhibit B, Frank Deposition, pp. 125-26.
[13] Id. ¶ 13.
[14] Id. ¶ 14, 15.
[15] Id. ¶ 15.
[16] Id. ¶ 16.
[17] Id. ¶ 17.

LME subsequently discovered other situations in which amounts paid to Frank in connection with pre-need funeral contracts were not used to fund pre-need insurance policies.[18] Consequently, because the pre-need insurance policies were not properly funded, no money was allocated to cover the costs of the agreed upon funeral goods and services when the customer died.[19] Yopp believed that Frank's actions of taking money from customers for pre-need funeral contracts and not depositing the money into an LME financial account was in violation of the law.[20] Yopp further believed that there were other instances where Frank failed to properly fund customer's pre-need insurance policies.[21]

Yopp determined that Frank's handling of the pre-need payments failed to comply with LME's legal obligations, threatened the license to continue LME's funeral home operations, and potentially damage LME's reputation in the community.[22] Based on this determination, Frank was sent a written notice of termination for cause on October 2, 2017; LME paid Frank his salary in full through his last day of work.[23]

The issue before the Court is whether Defendants breached the Management Agreement by terminating Frank's employment for unlawful use of money of the business. Defendants assert that despite express specific statutory requirements governing the proper use and handling of money received in connection with pre-need funeral insurance policies, Frank took money paid by a customer to purchase a pre-need policy, failed to report receipt

---

[18] Id. ¶ 19.
[19] Id. ¶ 21.
[20] Id. ¶ 22.
[21] Id. ¶ 23.
[22] Id. ¶ 25.
[23] Id. ¶ 27; Doc. 65-7, Deposition Exhibit 7.

of the money to LME, failed to properly fund the pre-need policy, and failed to deposit the money into a trust account or any account associated with LME. Defendants inform the Court that it was not until Frank was confronted by representative of LME that he repaid the money received from the customer—over seven months after receiving it.

Defendants submit the deposition testimony of Frank wherein he admitted that he failed to deposit the funds paid for the pre-need policies.

> Q.   ...Was any of the money that was paid for the pre-need policies ever deposited into trust accounts?
>
> A.   No, sir.
> ...
>
> Q.   Okay. And were you aware at the time that it was a violation of the law to take funds from a pre-need funeral account and then fail to apply them to the policy or deposit them in the trust account?
>
> A.   Yes, sir.[24]

In his opposition, Frank argues that Defendants have failed to establish a theft or stealing by Frank because they failed to show that the insurance premiums were the property or money of the Company (LME) and that Frank had an intent to deprive LME of the premiums permanently. Frank maintains that there is a factual dispute as to whether (1) Frank intended to permanently deprive LME of the funds, (2) there existed any "pre-need funeral contracts" to which Louisiana Revised Statute 37:865(B) applies and the cancellation periods for same, (3) that the "pre-need insurance" premiums are property of

---

[24] Defendants' Exhibit B, Frank Deposition pp. 105-106.

LME, and (4) Frank stole or unlawfully used property or monies of LME. Frank submits no summary judgment evidence to support these factual disputes.

As noted by Defendants, Frank does not dispute that he received $9,000 from an LME customer but failed to deposit the funds into an account or trust account of LME. Frank does not dispute that he deposited these fund in his own account and failed to notify LME of the transaction. Frank fails to dispute that he repaid the funds to LME only after he was confronted by Yopp, or that he mishandled funds received from LME customers on at least six other occasions.

It is undisputed that Frank unlawfully handled funds for pre-need funeral contracts and/or policies. The Court finds that there is no genuine issue of fact that LME and Yopp had just cause for terminating the Management Agreement with Frank. Consequently, Plaintiffs have failed to establish a breach of contract claim.

## CONCLUSION

For the reasons set forth herein, the Court will grant Defendants' Motion for Partial Summary Judgment and dismiss Plaintiff Frank Labby's claims in Count I with prejudice at Plaintiff's cost.

**THUS DONE AND SIGNED** in Chambers on this 24th day of September, 2020.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**